22-7003 U.S. v. Warrington. Mr. Arceci? A couple generations. Arceci. Arceci. Sorry about that. That's fine. Good morning, Your Honors and Counsel. John Arceci from the Federal Defender's Office in Denver, appearing for Appellant at Warrington. Your Honor, as I indicated in the notice that we filed last week, I want to focus today on the second issue from our briefing. And that is that the District Court committed plain error by imposing a $15,000 special assessment, $5,000 per count, under the JVTA Section 3014. Do you acknowledge that you have to overcome plain error review? I certainly do, but I also acknowledge a step further. This is not the typical plain error case in which we're appearing. But it's one that is well within the wheelhouse of what this Court has recognized as plainness. Your Honor, the door is open behind you. That's because I was the last one in to the Court. Thanks. Start us. The clock shouldn't be running. Well, we'll see. I'll add something. But yes, this is plain error, and I think it's a plain error case that turns on the first two prongs. No one's contesting the third and fourth prongs, and that's unsurprising. Given that, we're right. It's an equal sentence. On the plainness front, our argument concerns on the plain statutory text, which is what the Second Circuit relied on in finding this statute to be plainly erroneously applied when it was applied there on a per-count basis. The Statute 3014 directs to assess an amount of $5,000 on any non-indigent person who is convicted of one of the qualifying offenses. As the Second Circuit put it really plainly, assessing an amount, particularly a specific amount, on any person straightforwardly means to do just that. It wouldn't have been clearer, though. I know the Second Circuit said an amount on any person, but an is rather indefinite. In fact, I think by definition it's an indefinite article. So doesn't the statute need to say the amount to be clear? I think if it said the, if it said the, it arguably would be more clear in another direction, actually. If you look at, that's how 3013 is phrased in an offense-based argument. In offense-based, a per-offense model, it says the amount of $100, for instance, in the case of a felony. So the specificity in 3013, which uses the article B, actually has been interpreted universally to be a per-offense. By contrast here, it's not just an amount. It's an amount of $5,000 on a person. And that's what I think makes this one different. And I think this is what recognized in the Brown case that cited in our briefs with respect to cleanness. There's a line in there that says, sure, the fact that Congress couldn't be more clear doesn't negate that there is adequate clarity in the particular statute under consideration for purposes of cleanliness. You mentioned 3013, and it's a per, that's a per-offense. Been around a long time, and it's a per-offense. Then Congress enacted 3014 and titled it as an additional special assessment and refers to 3013. So why doesn't that show that the two sections are part of not only the same assessment scheme, but they would both be per-offense assessments? Yeah, I think, well, two responses, I think. One is the language in 3014 is very different, and purely so. And the other reason is that I think what Congress is saying in referring to it as an additional assessment is that it is just that. It is an additional assessment, but it is unquestionably also a different assessment, right, in the sense that you do 3013, right? You impose $100 per felony count, you go through that operation, right? You go through fines, you go through restitution, you go through the AADA, the 2259A assessment, and then when all that's done, you do the JDTA. It literally comes last in the order of economic sanctions. And in referencing 3013, it's simply making clear that this is additional. This is an additional $5,000 assessment to be imposed on anyone who is convicted of one of these qualifying offenses. And I think looking at 3013 is actually, I don't think you need to go there, honestly. I think the statute, just read the plain text of 3014, and it answers the questions it did for the Second Circuit. But I think 3013 actually helps us. That statute is so differently worded and so differently structured than 3014 that the fact that Congress is doing something very different in 3014 is actually, I think, a really good evidence of the fact that this is meant to be a per defendant, not a per offense. It would have been very easy to either mirror the language or the structure of 3013 in 3014 and say, for instance, in addition to 3013, the court shall assess in person convicted of an offense under the amount of $5,000 in the case of conviction of an offense under the qualifying statutes. That's 3013 as articulated on a per offense basis in 3014. That's not what Congress did. So I think it actually, in comparison to that statute, actually helps us. Elsewhere in 3013, too, I think there are textual clues that courts have relied on in interpreting that statute that make clear that the total assessment contemplated in that statute may have more than one possible value. So you look at subsection B in 3013, and it talks about the such amount so assessed. If there's a suggestion of the statute, it may not be just $100 per felon. It may be $400 for four felons, the amount. Nothing like that in 3014. Similarly, subsection C in 3013 talks about all assessments. Again, plural, contemplating more than one in 3013. That type of language is also lacking in 3014. Now, none of that's dispositive. But the absence of any other textual indications in 3014 that are present in 3013 makes it really clear and really adds to the clarity of just the plain text. So the Second Circuit, if I'm reading it correctly, thought that the assessment in 3013 at $100 and the assessment in 3014 at $5,000, that that difference mattered. But why should it matter? Yeah, I'm not overly persuaded by that, to be honest. And we leaned into that as part of the reasoning. And I think Congress can impose a $50 assessment or a $50,000 assessment. I think it matters on the margins in this way, though. If you look at 3014, it also contains an indigency exception, right? It only applies in the case of finding of non-indigency. Now, obviously, we're here at the Criminal Justice Act case where finding of indigency has been made in one context. Non-indigency in 3014 does mean something different. But the $5,000 coupled with a non-indigency provision, I think, does recognize. It shows that Congress recognized that this was a large sum. This is a significant additional penalty that's being imposed in these cases. And I don't think it's unreasonable to think that Congress, if it meant to sort of create the possibility for that penalty to be exponentially multiplied by a count of conviction, then would see so far more clearly and indicate that that would be the case. So I think $5,000, it matters in that respect. But I don't think that because it's $5,000, that necessarily means it can only be per defendant. I'm not suggesting that Congress couldn't impose a $5,000 per count assessment on all federal criminal defenses or permitting them to put that aside for today, but couldn't in this context. But it's just not the statute that I wrote here. Was he convicted of three offenses? He was convicted of three offenses, each of which would fall under one of the chapters. Yeah, I qualify. And that's without a lot of analysis in the district court below. But that's, again, why we're here in Plano. Simply imposed this on a per count basis. And frankly, from what I can tell, in a survey of cases, that's not uncommon. I put in our opening brief that there are cases that come down on both sides, where some courts are uncritically sort of saying per count, or just one assessment regardless of the number of counts. And that we only have these three cases that I think do identify that early engagement issue. And I just think this is, if you just read the statute, put 3013s, put the Third and the Ninth Circuits, just read this text of 3014, I think you'd end up where the Second Circuit ended up. You agree that the Third and Ninth have ruled contrary? I cannot dispute that. Well, I have an institutional question, though. Because say a panel of this court felt very strongly that it means one thing. But there's actually the majority, two out of three, of the other circuits that have grappled with the issue have gone the other way. Should we say that that's plain? Couldn't you get a panel of this court that thinks the same way as the panels of the Third and Ninth Circuit? And it seems to undermine the notion of plain error review in a way. If we can just say, we think they're wrong. Because that happens not infrequently. I don't think that there's a member of this court that would make the same mistake that the Third and Ninth Circuit did. That being said, I mean, sure, like I said at the beginning, this isn't the posture that we should confine ourselves in. But it's well within the wheelhouse of what this court has recognized as combating plain error. I'll give you four cases I think you should look at. Are these going to be cases where we differ by plain error, even though another circuit ruled contrary? They are. It's McCarr, which is in our briefs. Overholt, which is in our briefs. Brown, which is in our briefs. And Hidley, which is cited in Brown. Overholt was by a brand new judge who probably didn't know any better. I think I started strong and will continue to reach the right results. No, I think what you said in Overholt is correct. This is rarely employed as a mechanism of finding plainness. But of course it's available to the court. It's recognized later in McCarr, which is just your hands aren't bound because another court makes a mistake. But two circuits? I don't know if there's a magic number here, but it's the same reason. It might have been enjoyed. It's the same reason between the third and the ninth. And so one's wrong, the other's wrong. I mean, the cases are pretty similar. And the ninth is split. So you've got five judges and four judges. They view this differently. And I just think in the cases of statutory analysis is where this arises. And if you read those statutes, and I think you should read the statutes of Second Circuit, when you require a per count assessment, then yes, you can say they got it wrong. This text plainly requires a current defendant in position of this enhancement. And that we're well within the scope of what we previously recognized as plain error in doing so. Well, if it's – would you agree, though, that if there's – let's say that your argument carries force, but it's still arguable whether the 3014 is clear or ambiguous. Maybe it seems more clear than ambiguous, but not so clear that it's beyond debate. Then does the circuit split become relevant in determining whether there would be plain error? I don't think so. I think what we need to show is that it's a clearly erroneous application of statutory law. And I would guess I would point you back to that language I quoted from Brown, which is that just because the language could be more clear, if you're persuaded that it's clear and clear enough, then it is a clearly erroneous application of statutory law. That's what you need to be satisfied with. I'd like to reserve my remaining 40 seconds. Good morning, Your Honors. I'm going to please the Court. Kyle Essling on behalf of the United States. With all due respect to Mr. Narcisi's arguments, I do appreciate his efforts to establish that the statute says and he claims it does. Even assuming an error in this case, when a circuit split exists and the district court follows a majority approach in that circuit split, it's the government's position that no plain error occurred. For the reasons stated in both the Third Circuit's opinion and John Mennon and the Ninth Circuit's opinion and Randall, the government's position is that those circuits have correctly interpreted Section 3014. As Randall said from the Ninth Circuit, the mirrored images or the similarities between 3013 and 3014 are all but conclusive that 3014 should be applied on a per count basis. For all of those reasons, there was no plain error here when the district court imposed the assessment on a per count basis. I'd actually like to spend most of my time today talking about the motions pressed and if this Court doesn't have any questions for me on the assessment issue, I would actually turn there. Well, I want to follow up on your argument about the circuit split and ask if you could address the cases that Mr. Narcisi mentioned because if I'm understanding his argument, in the face of a circuit split, we nonetheless said there was no plain error. So could you speak to that line of authority that he cited? I think my response would be twofold, Your Honor. First of all, I would just reiterate that this Court has said generally a circuit split will not result in a plain error. Secondly, I think— What's your best case? Well, I guess I don't have a case handy for where this Court has said generally we do not find a plain error when a circuit split exists, although I know—I actually practice in Iowa almost entirely. I'm a detailee who volunteered to spend 12 months in Oklahoma, and I know the Eighth Circuit and the Tenth Circuit both have cases saying generally a circuit split does not result in a plain error. And I think most importantly, Judge Madison, in echoing what Judge Hartz asked in his question, I think there's institutional reasons why when there's a circuit split, generally you should not find a plain error, and that's because the error simply cannot be plain, one. And two, because doing—ruling that there is an error in that case, to some extent is dicta, if the ultimate conclusion is that, well, even if there was an error, it's not a plain error because of the circuit split. And that's really what I think is the correct outcome here. Setting aside whether or not this Court or this panel believes the interpretation of 3014 should be on a per count or per defendant basis, the simple fact of the matter is the district court was informed and understood there's a circuit split on the issue. That majority approach is that there is the approach to assess the $5,000 per count. There was very little discussion in the district court about this, nothing close to the effort that Mr. Arsici has put forward on appeal. And given all of that, there just simply cannot be a plain error here, at least in this circumstance. And although there may be circumstances, as Mr. Arsici points out, where this Court has found plain error despite the circuit split, it's the government's position that this case did not merit that result, Judge Mathison. If there are no further questions on the assessment issue, I will move to the motion to suppress. And this Court should affirm the district court's denial of Mr. Warrington's motion to suppress. Viewing the evidence in the light most favorable to the government, the motion was correctly denied. And I'll start with the fact that the motion was actually waived pursuant to Federal Criminal Procedure 12. Mr. Warrington filed the motion to suppress May 19th, 2021. That was six months after the recorded interview he was seeking to suppress, six months after his counsel was given a copy of that recorded interview, two months after the pretrial motion deadline, and just four business days before trial. The Court, in this case, had just hours to review that motion prior to the hearing, in part because the Court and this attorney was engaged in a trial in the days leading up to the motion being filed and the hearing taking place. Didn't the Court specifically say he was not denying on time on this? He did, Your Honor. The way I view the record, what the Court said, and this is at page 44 of Volume 3 of the appendix, he said, quote, I am not happy it was late, but I am ruling on it because, you know, legally there is no precedent that mandates suppression of that audio. And so my view of that is he's essentially saying I don't need to decide whether it's on time or whether it's waived because legally there's no grounds to suppress the motion. And so although he didn't rely on waiver, I don't know, I would not agree that he actually decided it was not waived, that this Court did not find good cause, which I think is important because here, essentially, Mr. Warrington is given no reason why the motion to suppress was filed late. He had all the information needed prior to the pretrial motion deadline. All that's true, but the defendant's lawyer said, if I may, Your Honor, for the record, you are not denying it because it is out of time, are you? The Court, no, I am not. That's correct, Your Honor. I can't disagree with— So you'd have to be saying that it would have been abuse of discretion to rule on it as timely, would you not? I don't think so here, Your Honor, because the district court would have made a legal error before even reaching his discretion, a legal error being he did not find good cause, which is a requirement to find—to excuse the waiver. And there is no good cause here. The only cause offered— The cause offered was McGirt, I think. That's correct, Your Honor. That was first raised in the defendant's reply group. It was never articulated in the district court. No, but I think he's talking about the circumstances of McGirt and the impact it's had on lawyers and judges in Oklahoma, about which you're aware. But I think that's only in the reply group. It was not raised in the district court. At pages 10 to 11— But I mean, I think that's what the Court's talking about. Oh, the Court's view, okay. That may be true, Your Honor, but the defendant's attorney did not articulate that as a basis. At page 10 to 11 of the—volume 3 of the appendix, his attorney said, quote, As far as timeliness, I didn't know what they were going to offer. He filed it, quote, when I learned exactly what they wanted to do. But that's not the way it works. As the Sixth Circuit is held in music and in a beat group, the defendant either had an opportunity to understand what the government was going to do with that audio. Immediately following the arraignment, the defendant could have asked for sort of a Federal Rule of Criminal Procedure 12b.4, what do you intend to do with the audio? He didn't. Indeed, the defendant here twice, of two of the six motions he filed in advance of trial, were actually asking the government, what do you intend to do? One of those was, do you have any Rule 4.4b evidence? And another was, do you have any other experts than those that you've noticed already? And those motions were filed in the period of Appendix Volume 1, pages 35 and 42. Given all of that, there does not seem to be good cause— Counsel, when did the government give notice that it planned to offer these statements to the FBI agents at trial? At the latest, Your Honor, the government would have first given its notice in all of its pre-trial materials filed, I believe, on April 9th. I think the government also gave notice prior to that, but I can't think of an exact place on the record I can point you to for that. It would be in our brief, to the extent I'm unable to. But I know in our pre-trial submissions, no later than April 9th, and in the final pre-trial conference in April as well, there was discussion about the audio, detailed discussion about the audio. There was discussion in the trial brief or in the proceedable issues list for the court that the remaining portions of the audio should not be submitted to a Proof 106 because they would be hearsay. Lots of conversation about it. The defense, again, knew very much about this audio. Finally, the last thing I'll say about waiver is that this court's decision in Bryant, for example, where this court said a district court deciding the merits of a Rule 12 motion does not preclude this court from finding a waiver, and then this court in Bryant did, in fact, find a waiver. It would seem to be applicable here. This court in Burke, Judge Hartz, said that this court will rarely grant relief under the good cause standard. In Bowline, this court said the district court cannot overlook the good cause standard. Other circuits, Sixth Circuit, Obeekwu, Siska, Second Circuit, Milan, Rodriguez, and Eleventh Circuit, Sweeney from the First Circuit, all of those courts said, as this court does, to excuse a waiver you need good cause, and the district court didn't find any here other than perhaps in Burke. But again, that wasn't a good cause articulated by the defense attorney himself. Turning to the merits, as the district court said, even excusing the untimeliness, the motion should be denied all the merits, first of all, because there was no Sixth Amendment right to counsel. I'm actually, instead of talking about my arguments, I'm going to address a few of the arguments the defense raised in his briefs. First of all, the defense, in my reading of the reply brief, the defense is essentially saying, under existing precedent, he cannot secede. Instead, he's asking for what I describe as an exception to the Sixth Amendment right to counsel, the exception being, one, the charges here arose in the same factual circumstances as the state charges, and two, McGirt happened, and essentially the state charges have been pending for two years, and those two things combined somehow justify a right to counsel from the state case continuing in the federal case. And I'll address both of those in turn. First of all, as to the fact that the federal charges were in a certain way intertwined and related to the state charges, that line of argument has been rejected by the Supreme Court in Cobb, where the court said, no, we're not going to consider the relatedness, we're just going to look to see whether the charges are the same under Blockberger. And as we set forth in the governor's brief, they're not the same under Blockberger. Turning to the second factor of the defendant's proposed exception, the amount of time, essentially, that the state charges were pending, there's nothing in federal law that would support exception based on the length of time that a prior charge had been pending. I'll point to several cases at this time. First of all, from this circuit, Pickens and Skipworth, both cases saying the Sixth Amendment right to counsel in one earlier case does not invoke the right in another case. This court's decision in Mullins, there, there was a federal charge. The federal charge was dismissed. There was some admissions made, and then subsequent federal charges, and Judge Gorsuch in that case held no Sixth Amendment violation. Most factually analogous to this case would actually be the Second Circuit's case in Mapp. In that case, the defendant was charged with murder, and that charge remained pending for four years on the state side. It was then dismissed. At that point, the federal interviewees or agents obtained some admissions from the defendant, and then charges were brought subsequently. The Second Circuit held no Sixth Amendment violation. In Topford, the Eleventh Circuit case, the state charges were pending for close to a year. Other cases I would point you to where there was less time when the state charge was pending than up to a year would be Alvarado and Montgomery from the Fourth Circuit, Noble and Cato Riggs from the Sixth Circuit, and Martinez from the Ninth Circuit. And so for all of those reasons, his proposed exception does not fit in the state of the law as it is today. Turning to another argument that Mr. Warrington makes is his reliance on this court's decision in Thomas, and for several reasons, reliance on Thomas would be misplaced here. For one, as this court has said in Mullins and in Ryans, Thomas, like the ethical rule at issue with Thomas, is triggered only when the right to counsel attaches. And because there's no right to counsel here, for the reasons stated, Thomas is inapplicable. For another thing, the facts in Thomas are not the facts here. In Thomas, the defendant was charged with a federal crime, and then a month after he was appointed an attorney, agents interviewed him and obtained a written confession. That's not the situation we have here. Another thing, Thomas itself said that suppression was not the correct remedy in that case. This court, again, has echoed that in addressing Thomas in Korver and in Mullins. And then to the extent that Thomas purported to graft Rule 4.2 into those dispersed considerations or into the Sixth Amendment considerations, that has been repeatedly rejected both in the Supreme Court and in this court. Judge Gorsuch in Mullins made that point, and both in Cobb and Montejo, the Supreme Court directly confronted Rule 4.2 and said that it has no effect on the constitutionality of agents' actions. Even assuming that there was a right to counsel, as the district court said, the right to counsel is waived here. The defendant does not challenge that, other than saying that there was a misrepresentation made 28 minutes into the conversation. But as stated in the government's brief, and by the district court, that misrepresentation did not invalidate the waiver. Thank you, Your Honor, for your time. I'd also like to mention that the victim's parents are actually here present today, and they very much thank you for your time as well. Thank you. Thank you, counsel. You said you wanted to reserve 40 seconds, but you've got 44. I don't need the 40. I just have two things. I'm just going to ask the government about the best cases from their position. And I do want to acknowledge the contrary authority, partly in candor and partly because it's by the same author of Oberholt. And that's the T case cited in the briefing. And that does state a rule of you don't apply plain error in the context of circuits, but it's more categorically. I think it just overstates the practice of this court and the rule of other cases. And I think the facts of that case make clear why it does so, in the sense that there was a weight of authority completely against the defendant's position in that case on a far more obtuse question. What I'm asking you to do is the Brown case, where this court said that this was a somewhat close question. Surely the guideline could have been written more clearly, but it nonetheless found plain error. Brown, McCarr, those are the cases that state this rule, and I ask you to follow. Thank you. It's comforting to know that both counsel agree that I've written at least one incorrect opinion on the subject. Counsel are excused. Case is submitted.